### In re BACK BAY AUTOMOBILE CO.

(District Court, D. Massachusetts. October 28, 1907.)

#### No. 12,784.

1. BANKRUPTCY—COMPOSITION—SCHEDULE—FILING — EXAMINATION OF BANKRUPT—TIME.

Bankr. Act July 1, 1898, c. 541, § 12a, 30 Stat. 549 [U. S. Comp. St. 1901, p. 3426], provides that a bankrupt may offer a composition after, but not before, he has been examined in open court or at a meeting of his creditors, and has filed in court the required schedule and list of creditors. *Held*, that the examination contemplated is not an examination of the bankrupt as a witness on the issues of insolvency and the commission of acts of bankruptcy charged, but the examination to which the bankrupt is required to submit by section 7a, subd. 9 (30 Stat. 548 [U. S. Comp. St. 1901, p. 3425]), when present at the first meeting of his creditors, and at such other times as the court may order, which meeting cannot be held until after adjudication as expressly provided by section 55a (30 Stat. 559 [U. S. Comp. St. 1901, p. 3442]).

**2. SAME—REFERENCE—TIME.**

Bankr. Act July 1, 1898, c. 541, § 22, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3431], providing for reference of bankruptcy proceedings, permits no such reference until after adjudication.

**3. SAME—SCHEDULE—FILING—TIME.**

The schedule contemplated by Bankr. Act July 1, 1898, c. 541, § 12a, 30 Stat. 549 [U. S. Comp. St. 1901, p. 3426], providing that a bankrupt may offer a composition after he has been examined in open court or at a meeting of his creditors, and has filed in court the schedule of his property and list of creditors, etc., is the schedule required by section 7a, subd. 8 (30 Stat. 548 [U. S. Comp. St. 1901, p. 3425]), to be filed within 10 days after adjudication, and not schedules filed prior to adjudication.

**4. SAME—CLAIMS—ALLOWANCE—MEETING OF CREDITORS.**

Under Bankr. Act July 1, 1898, c. 541, § 55b, 30 Stat. 559 [U. S. Comp. St. 1901, p. 3442], providing that the court shall allow or disallow the claims of creditors presented at the first meeting before proceding with other business, claims cannot be allowed without a meeting of creditors.

**5. SAME—"WHENEVER."**

The word "whenever," used in Bankr. Act, July 1, 1898, c. 541, § 55e, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3442], providing that the court shall call a meeting of creditors whenever one-fourth or more in number of those who have proven their claims shall file a written request to that effect, etc., should be construed to mean "whenever after the first meeting," previously required to be held by section 55a (30 Stat. 559 [U. S. Comp. St. 1901, p. 3442]), which can only be held not less than 10 nor more than 30 days after adjudication.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 8, pp. 7441, 7442, 7835.]

**6. SAME—APPOINTMENT OF TRUSTEES—TRUST ESTATE.**

Under Bankr. Act July 1, 1898, c. 541, § 44a, 30 Stat. 557 [U. S. Comp. St. 1901, p. 3438], providing that the appointment of a trustee in bankruptcy shall be made at the creditors' first meeting after adjudication, there can be no trust estate for administration under the act prior to adjudication.

**7. SAME—PROOF OF CLAIMS—"PROVEN."**

Bankr. Act July 1, 1898, c. 541, § 55e, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3442], provides for the calling of meetings of creditors whenever one-fourth or more in number who have "proven" their claims shall file a written request therefor. *Held* that, though the term "proven" does not necessarily mean allowance, a claim cannot be regarded as "proven," within such section, until the written proof required by section 57a (30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]), shall have been filed or lodged with the court or some officer thereof.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, p. 5747.]

**8. SAME—"FIRST MEETING."**

The term "first meeting of creditors," used in Bankr. Act July 1, 1898, c. 541, § 55b, 30 Stat. 559 [U. S. Comp. St. 1901, p. 3442], providing that at the first meeting of creditors the judge or referee may allow or disallow claims then presented, means the first meeting after adjudication provided for in section 55a.

**9. SAME—COMPOSITION—ALLOWANCE.**

A composition with the creditors of an alleged bankrupt cannot be allowed pending determination of the issues raised by the answer to the bankruptcy petition, prior to adjudication and before the first meeting of creditors provided for by Bankr. Act July 1, 1898, c. 541, § 55a, 30 Stat. 559 [U. S. Comp. St. 1901, p. 3442].

On Request by Certain Creditors for the Call of a Meeting to Consider Acceptance of a Composition Offer.

Bates, Nay & Abbott, Edwin N. Hill, A. K. Cohen, and Henry W. Beal, for creditors.

Arthur Lord, for bankrupt.

DODGE, District Judge. There has as yet been no adjudication in this case. The involuntary petition filed August 15, 1907, is contested by the debtor, which denies the commission of the act of bankruptcy alleged. On September 3, 1907, a reference to ascertain and report upon the facts was ordered. No report under this reference has yet been filed. The alleged bankrupt has, however, filed in court an offer of composition and what is stated to be a majority in amount of the known creditors request that the court call a meeting of creditors under section 55e of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3442], to consider its acceptance. These creditors insist that a composition may be offered and accepted, under the act, before adjudication. The learned referee, to whom the question of adjudication was sent by the order of September 3, 1907, has filed a preliminary report upholding this view, and recommending such a composition as the most expedient course under the circumstances. A considerable minority of the known creditors oppose the request, and insist that no composition before adjudication is possible under the act.

Due weight must of course be given to the opinion of the referee, whose knowledge and experience in bankruptcy matters are well known to be such as entitle any opinion of his upon a question of this kind to respect. Due attention is also to be paid to the considerations of expediency suggested in his report. They are sufficient to incline the court in favor of the course suggested, if the bankruptcy act permits it to be taken. It cannot be denied, however, that the difficulties in the way of believing that the act does so permit are many and serious. They may be stated as below; the word "bankrupt" being understood to include a person against whom, as against this debtor, a petition has been filed, according to section 1 (4).

1. By section 12a, a bankrupt may offer composition after, but not before, he has been examined in open court or at a meeting of his creditors, and filed in court the required schedule of his property and list of creditors.

The report states that the bankrupt "does not object to examination, has been already examined in open court under the present issue, and has filed his schedules of assets and liabilities."

The examination contemplated in 12a can only be the examination to which the bankrupt is required to submit by section 7 (9), "when present at the first meeting of his creditors and at such other times as the court shall order." The first meeting of this bankrupt's creditors has not been held. It cannot be held until after adjudication, according to section 55a. The court has never ordered any examination of this bankrupt. Examination as a witness upon the issues of insolvency and the commission of the acts of bankruptcy charged, under the pending reference, is plainly not the examination referred to in section 7 (9), whose scope as there defined is far wider than could be that of any examination possible under such a reference, and whose purpose

is to assist that administration of a bankrupt's property which the court undertakes only after adjudication. If the court had ordered or should at this stage of the case order the bankrupt to submit to an examination under section 7 (9) or to appear for examination under section 21 (a), there would still be a doubt too strong to be dismissed as unreasonable whether such examination would be the examination contemplated by section 12a. And the power of the court to order such an examination before adjudication is at best doubtful. Re Davidson, in this court, opinion dated March 26, 1907, 158 Fed. 678. A reference to the papers in Re Dubinsky and Re Rathman seems to show that the referee was mistaken in supposing that such an examination was ordered in those cases.

If, as the referee states, the bankrupt has filed its schedule of assets and liabilities, the filing has been with the referee only. At present there has been no reference under section 22, and that section permits no such reference until after adjudication. Before such reference it seems to me doubtful whether "court" can include the referee according to section 1a (7). The bankrupt must file his schedules in court, according to section 7a (8) within 10 days after adjudication. It may be true, as the referee says, that there can be no objection to the bankrupt voluntarily filing them at any time. But the filing contemplated in section 12a must, I think, if the most natural and reasonable construction is sought, be the filing required by section 7a (8).

2. By section 12b the court may be asked to confirm a composition "after, but not before, it has been accepted in writing by a majority in number of all creditors whose claims have been allowed, which number must also represent a majority in amount of such claims."

No claims have yet been allowed. None can be allowed without a meeting of creditors. By section 55b the court is to allow or disallow the claims of creditors presented at the first meeting, before proceeding with the other business. There must be an opportunity for objections to allowance by parties in interest under section 57d. The first meeting of creditors cannot be had until after adjudication. The terms of section 55a make this clear beyond doubt, and no dispute on this point is attempted. It is said however, that a meeting of creditors may be had at any time under section 55e, that at such a meeting, if now had, creditors' claims may be allowed, and that the required majority of all claims so allowed may make the acceptance required for confirmation by section 12b.

It is clear that a meeting of creditors now had could not be the first meeting of creditors provided for by the act, although in point of fact it would be the first meeting held. The act providing for a "first" meeting at a given time, there is difficulty in believing that a meeting now had would be in any sense a meeting under the act. That it was intended that there might be a meeting before the first meeting, is hardly a natural supposition. The supposition that "whenever" in section 55e means "whenever after the first meeting" previously provided for in 55a is one which it is certainly less difficult to accept.

The referee has suggested in his report that at such a meeting as is proposed a trustee should be appointed. This, I am satisfied, would

be impossible in any event. Section 44a is express to the effect that the appointment of a trustee is to be made at the creditors' first meeting after the adjudication. Before adjudication there can be no trust property. Section 70a. The language of section 44a seems to me to afford additional support to the supposition that the true meaning of section 55e is as above stated.

There are difficulties in the way of sanctioning the proposed meeting other than those depending upon the provisions regarding the first meeting. By section 55e there must be a written request for a meeting under it from one-fourth or more in number of those creditors who have proven their claims. "Proven," it is true, does not necessarily mean "obtained the allowance of" their claims. But before a claim can be regarded as proven, the written proof called for by section 57a must at least have been filed or lodged with the court or some officer thereof. That such written proof has been completed is not enough so long as the proof remains in the hands of the creditor or his attorney. J. B. Orcutt Company v. Green, 204 U. S. 96, 27 Sup. Ct. 195, 51 L. Ed. 390. Since no trustee has been or can yet be appointed, proofs could not be delivered to him as in the case cited. Possibly delivery to the referee might be enough, although no general reference of the case to him has been or can yet be made. But even if written proofs were now filed in court, they would be proofs of creditors who had chosen to file them now for their own purposes, in the absence of any general notice to all creditors that proofs of claims might now be filed. It would not naturally occur to a creditor to prove his claim at present, because at present there is no bankrupt estate. I find it difficult to believe that the act can intend that any action by the court is to be obtained by the request of one-fourth of the owners of such claims as may be thus filed.

3. If a meeting were called as proposed, the first step toward acceptance of the composition offer would necessarily be the allowance of such claims of creditors as had been then proved. The judge or referee may allow or disallow claims at the first meeting of creditors, according to section 55b; and it seems to me impossible to say that "first meeting" here means anything different from the first meeting after adjudication, spoken of immediately before, in section 55a. In view of this provision and of the connection in which it stands, and of the fact that from no provision contained in the act can it be gathered that allowance of claims is to be permitted before the first meeting with which sections 55a and 55b deal, I am obliged to hesitate before the conclusion that claims may be allowed in bankruptcy before it is ascertained that there is an estate to be distributed.

To pass from examination of the terms of our present act to more general considerations: It appears that under other bankruptcy systems to which reference has been made composition before adjudication has been allowed, but when allowed it has been done by express and unmistakable statutory provisions. This is true of the English statutes now in force, and it was true of the amendment to our act of 1867, in force from 1874 to the repeal of the entire act in 1878. No provisions for any composition whatever were contained in the original act of 1867. By the

provisions of the amendment as they stood from 1874 to 1878—"whether an adjudication shall have been had or not"—the creditors might, at a meeting to be called upon notice to every known creditor, accept an offered composition. The question of acceptance was settled by the votes of the creditors present at the meeting in person or by proxy. Confirmation of an acceptance by signatures of the debtor and of a fixed proportion of all the creditors was required. The debtor had to be present at the meeting, answer any inquiries made of him, and submit a statement showing the whole value of his assets and debts, with the names and addresses of all his creditors. If accepted, the composition bound all creditors named in the statement submitted by the debtor at the meeting, but no others.

These provisions are clear and definite. They leave nothing essential to the plan open to question, or to be gathered only by implication from language which may or may not mean the same thing. They raise no questions as to "proof" or as to "allowance" of creditors' claims. They avoid the difficulties which I have found to beset the attempt to make sections 12 and 13 of the present act provide for and permit a similar result. If the intent of Congress in 1898 was to provide for composition without adjudication, it is difficult to imagine how it could have omitted to say so in plain words, in view of the language which had been used for the purpose in 1874.

The report of the Judiciary Committee which accompanied the Torrey Bill when introduced in 1892, quoted by the referee, seems to show that the Committee then supposed that the section of that bill which corresponds to section 12 of the present act would permit composition without adjudication. They were clearly wrong, however, in anticipating that there would be "a greater number of compositions than administrations," if, by "compositions," they meant compositions without adjudication. There has been in this district no instance of such a composition under the present act, and the present case is the first in which any attempt has been made to accomplish one. Nor has such a composition ever been made or attempted in any other district, so far as can be gathered from the sources of information available.

Having to decide whether or not the act as I find it permits a composition without adjudication, and in view of the fact that no precedent for an affirmative decision can be found, although nine years have passed since the act went into effect, I find the difficulties in the way of such a construction too serious to be disregarded. Even under the provisions of 1874, I find no reason to believe that a debtor could make a composition offer and procure its acceptance while in the attitude of denying before the court that he was a bankrupt at all, which is what is attempted in this case. While the bankrupt's denial stands, it seems to me that the issue raised by it must be decided before there can be such proceedings in bankruptcy as would vest the court with power to compel a minority of creditors to accept a composition at the will of the majority. All things considered, I am unable to satisfy myself that a composition offered in the manner now proposed could be safely confirmed by the court; and I am therefore obliged to deny the request for a meeting.

The following is the opinion of OLMSTEAD, Referee:

This involuntary petition was referred to me as referee under Rule 12 of the General Orders (32 C. C. A. xvi, 89 Fed. vii). The issue was as to whether an adjudication should be recommended. At the hearing in court before me, counsel for the corporation called the referee's attention to a desire and purpose on the part of the respondent corporation to make a composition offer of 25 cents on the dollar to its creditors. This proposition was resisted by counsel for various creditors, on the ground that the only issue before the referee was that of adjudication, and that he had not sufficient authority to pass upon the question of composition under the reference. This case involves, therefore, and squarely presents, the question as to whether a corporation may make a composition offer under the present law before an adjudication. If a debtor has this right before adjudication, the referee is of the opinion that, as an incident to the reference to him of adjudication, he has authority in connection therewith to call the court's attention to the desire and purpose of the respondent wishing to make such an offer before the question of adjudication is passed upon. In this case there were peculiar reasons advanced by Arthur Lord, Esq., as counsel for the respondent why an adjudication should not be had. The assets of the estate amounted to about $11,000, and the secured creditors to the same amount. The liabilities were about double the sum of the assets. There was, however, a valuable lease which had an important bearing on the good will of the concern and the continuance of its business, which, if retained by the respondent, might form the basis or means under which a satisfactory composition offer could be effected with its creditors. The referee's attention was called to the fact that the lease contained a clause that it would be avoided and forfeited if an adjudication in bankruptcy was had. The reasons, therefore, for making a settlement and adjustment with creditors under the beneficent provisions of composition before an adjudication were urged with peculiar force in this case.

That a composition before adjudication could be effected under the Act of June 22, 1874, c. 390, § 17, 18 Stat. 182, is clear. The provision of this section is that such a composition could be effected "whether an adjudication in bankruptcy shall have been had or not," and this procedure of a composition effected before an adjudication was had in the folllowing cases: In re Scott, Fed. Cas. No. 12,519, where a comparison is made in parallel columns of the English and U. S. composition law; In re Reiman, Fed. Cas. No. 11,673, s. c. 17 Ben. 455, and 505, where the opinion was written by Judge, afterwards Justice, Blatchford, and on review was affirmed by Mr. Justice Hunt, Fed. Cas. No. 11,675, 12 Blatchf. 562. The case of Reiman presents an elaborate justification and exhaustive explanation of the theory and constitutionality of composition. Cf. Farwell v. Raddin, 129 Mass. 8; Sage v. Heller, 124 Mass. 214; In re Alsberg, 9 Ben. 17, Fed. Cas. No. 260; In re Shields, 15 N. B. R. 532, Fed. Cas. No. 12,784; Mudge v. Wilmot, 124 Mass. 493, 494, affirmed in 103 U. S. 217, 26 L. Ed. 536. Such an offer under the English statutes can certainly

be made before an adjudication. Collier on Bankruptcy (6th Ed.) page 157. So much for prior legislation.

Coming now to the requirements of the present act, the question arises, are there any provisions which require that an adjudication should be had before a composition offer can be entertained? Section 12 contains three conditions precedent to a composition: First, that the debtor shall be examined "in open court or at a meeting of his creditors;" second, "filed in court the schedule of his property and list of his creditors required to be filed by bankrupts;" third, that the assents of a majority in number and amount of all creditors whose claims have been allowed should be filed in the court of bankruptcy.

It is to be observed that the word "bankrupt" includes the respondent in an involuntary petition. Section 1 (4). As to the provision that the debtor shall be examined in open court or at a meeting of his creditors, this provision appears to be met by section 55e, of the present bankruptcy act, which provides as follows:

"The court shall call a meeting of creditors whenever one-fourth or more in number of those who have proven their claims shall file a written request to that effect. If such a request is signed by a majority of such creditors, which number represents a majority in amount of such claims, and contains a request for such meeting to be held at a designated place, the court shall call such meeting at such place within thirty days after the date of the filing of the request."

The first four clauses of section 55 undoubtedly relate to a meeting after an adjudication. Subdivision "e" was intended to provide for meetings either before or after an adjudication. In this connection it is interesting to compare this provision with section 22a:

"After a person has been adjudged a bankrupt, the judge may cause the trustee to proceed with the administration of the estate or refer it (1) generally, to the referee, or specially with only limited authority to act in the premises, or to consider and report upon specified issues;" etc.

It is apparent from this clause, therefore, that a trustee must have been appointed at some meeting before the adjudication and reference. There is no provision for the appointment of a trustee by the judge. Such appointment is made by the creditors. Sections 38a (4), 44, 55a, 55b, 58c, General Order 12 (1) (32 C. C. A. xvi, 89 Fed. vii).

The language of the act in relation to the distinction between the allowance of claims and the proof of claims is carefully observed throughout sections 55, 57, and elsewhere. This distinction was lucidly maintained and emphasized by Judge Ray in Re Hornstein (D. C.) 122 Fed. 266, 274. Cf. Orcutt v. Green, 204 U. S. 96, 27 Sup. Ct. 195, 51 L. Ed. 390. The proof of a claim is one thing; its allowance by the court is quite a different step. When the act refers to a proof of a claim it means the deposition or statement of the creditor. When it refers to its acceptance by the court, it uses the word "allowed" or "allowance." Section 55e provides that one-fourth or more in number of those who have proven their claims shall file a written request. This means that the creditors before any first meeting has been called, as in such a contingency as is herein presented, may ask the court to call a meeting for the

purpose of considering the allowance of their claims. There are certain expressions in the General Orders which militate against this view. It is, however, to be borne in mind that the General Orders were largely made up from the former orders under the act of '67, and the language of those orders was retained, and in several instances the word "proved" is undoubtedly equivalent to "allowed." See Collier's Notes on the General Orders.

That such a meeting can be held for the allowance of claims under this provision of the act is apparent. At such a meeting, the condition precedent of examination in open court or at a meeting of his creditors can also be complied with. In the ordinary course of procedure, such a meeting would be held before the referee under a special reference. That such a hearing before the referee is also in "open court" may be gathered from the following provisions of the act. Sections 1 (7), 21a, 38a (2), 39a (5), 39a (9), 41a (3), 41a (4); General Order 12 (3) (32 C. C. A. xvi, 89 Fed. vii), and Forms 29 to 30 (32 C. C. A. lxv, lxvi, 89 Fed. xli, xlii). That a trustee should be appointed in all cases of composition is apparent from section 48a, of the act as amended, in order that the trustee may require the employment of a stenographer under section 38 (5) of the act, and make a report to the judge through the referee as to the advisability of the composition.

That this procedure before an adjudication is due administration is evident from the following provisions of the law (sections 3e, 9b, and 59, Collier's Notes on the General Orders, General Order 12, page 550), and includes the right to examine before an adjudication. Under the former provisions the court appoints receivers or marshals in certain specified cases. As to examination it has been determined that an examination could be made in the due course of administration before adjudication in the following cases: In re Fellerman (D. C.) 149 Fed. 244; In re Fleisher (D. C.) 151 Fed. 81, and cases cited; In re Herskovitz (D. C.) 152 Fed. 316.

In this district, in the case of Davidson, relied upon by counsel for the objecting creditors as a bar to an examination, no receiver had been appointed, and the debtor opposed the examination. In the present case a receiver has been appointed, the debtor does not object to the examination, has been already examined in open court under the present issue, and has filed his schedules of assets and liabilities. In the cases of In re Dubinsky [no opinion filed], and In re Rathman [no opinion filed], examinations were held in this district by the authority and order of the Honorable District Judge before an adjudication. Section 7a, subd. 9, as to the examination of the debtor, provides that the debtor shall be examined at the first meeting of his creditors, "and at such other times as the court shall order submit to an examination," etc.

The requirement of the act as to the schedule is contained in section 7a, subd. 8. This is an imperative provision as to the filing of the schedules. Certainly there can be no objection to the respondent voluntarily filing schedules at any time or at any meeting. Section 59d.

The words "adjudication" and "adjudged" occur in the act as amended 51 times in the following sections: 1a (2), 1a (4), 2 (1), 3a (5), 3e, 4b, 5a, 5h, 7a (8), 11a, 11c, 14a, 18d, 18e, 18g, 22a, 25a, 38a (1), 44a, 47c, 50c, 52b, 55a, 57n, 59a, 59b, 60b, 60c, 64c, 65b, 65d, 67e, 67f, 69a, 70a, 70e; Amend. § 19. An examination of the sections already considered and those just enumerated discloses, as the referee believes, no requirements of the act opposed to or inconsistent with the policy of the act to allow a composition before an adjudication; and the referee has not been able to discover any decisions to the contrary under the present act. As to text-writers, Loveland and Brandenburg are noncommittal, while Collier leans to the view that an adjudication must precede a composition, but some of the considerations advanced in this report, and some of the sections reviewed, do not appear to have been carefully considered by them. Certainly the origin, growth, and development of the law were not considered in this connection.

But, fortunately, as a reference is made to the original sources of the law and its evolution, to wit, the bills introduced in Congress, the reports of the Judiciary Committee accompanying them, and the debates in Congress, the policy of the law and of Congress to allow a composition before an adjudication is to the mind of the referee made clear beyond any doubt.

In the original bill introduced by Representative Ezra S. Taylor of Ohio in the Fifty-First Congress, H. R. 3,316, on Dec. 20, 1889, the requirements of the present act are substantially the same. Section 48, which became section 12 of the present act, reads in part as follows:

"Whenever a bankrupt shall have offered terms of compromise to his creditors, and the same shall have been accepted in writing by a majority in number of all known creditors who have proved their claims, representing a majority in amount of all known debts, if the offer shall have been for fifty per cent or more," etc.

This language of the original provision is strikingly similar to that of the present act, except that creditors who had only proved their claims before their allowance could avail themselves of it. Section 62 of this original act provides for meetings of creditors. At its end, after the clause relating to the closing of the estate, occurs the following:

"The court shall call a meeting of creditors whenever one-fourth in number of the known creditors of a bankrupt shall file a written request to that effect. Such meeting shall be called for a date within thirty days after the filing of the request."

This provision became section 55e of the present act.

In the Fifty-Second Congress, the same bill, to wit, the "Torrey Bill," was introduced on June 27, 1892, by Representative William C. Oates of Alabama, H. R. 9,348, which bill contained an analysis of the act. In the analysis occurs the following as explanatory of section 11, which then corresponded to section 12 of the present act:

"In most cases of honest failure, a composition or compromise can be effected between the debtor and his creditors. In order to enable the creditors

to pass upon the honesty of a debtor, and to calculate the worth of their claims, it has been provided that the debtor shall be examined in open court or at a meeting of his creditors, and file his schedule of property and list of creditors before the creditors shall be petitioned to accept the compromise which he offers. The offer shall not be filed in court until it has been accepted by a majority in number and amount of the creditors, and whatever is to be paid has been deposited subject to the order of the court. It is not intended that any offer shall be made except in good faith, and not unless it can be complied with upon its acceptance by the creditors."

In the report of the Judiciary Committee accompanying this bill, H. R. 9,348, the Judiciary Committee, on page 12, state emphatically that a composition can be made either before or after the adjudication. The clause is as follows:

"A composition may be promptly made by the debtor with his creditors, when it is desired by the former and a majority of the latter. A minority of the creditors will not be able to either prevent the composition as a matter of spite, or enforce the payment of their claims in full by interposing obstacles to the composition. It may be made either before or after the adjudication. If fraudulently procured, it may be set aside upon application made within six months after the adjudication. It seems probable that under these provisions there will be a greater number of compositions than administrations."

In this form this provision of the bill remained down to the Fifty-Fifth Congress, and passed Congress in the identical form in which it now appears. When the "Torrey Bill" in the Fifty-Fifth Congress went to a Conference Committee, no change was made in sections 11 and 12, now sections 12 and 13 of the act. "Congressional Record," volume 31, part 7, page 6429, June 28, 1898. It would, therefore, seem to be clear beyond any manner of doubt that the contemporaries, who have cast this powerful sidelight upon the construction of the act, were clearly of the opinion that a composition could be effected before an adjudication. Contemporanea expositio est optima et fortissima in lege.

The referee would, therefore, submit that he has authority under the present reference to call the Honorable District Judge's attention to the situation, as it exists in this case, but that if he has exceeded his powers the order of reference could be very easily enlarged granting him the authority to present this interesting and important question of procedure. The course of procedure which he would, therefore, recommend, if his views as before set forth are correct, would be that on the request of the requisite number of creditors whose claims have been proven (section 55e), or upon a petition as set forth in Form No. 60 (32 C. C. A. xxxii, 89 Fed. viii), a meeting should be called to consider the composition, on the analogy of the meeting as it was required under the act of 1874, to consider and pass resolutions as to a composition offer. This meeting could be held, and notices sent to creditors in accordance with the schedules already filed, an examination of the debtor renewed or confirmed as the creditors may desire, and a trustee also chosen for the reasons already stated. This procedure is plain and simple, and enables creditors to accomplish the purposes of effecting a composition before an adjudication. The question of compensation of officials and counsel is naturally included in a composition effected before, as well as after, an adjudication.